**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BOMBARDIER, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 15-00604 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 16, 19 |
| | : | | |
| UNITED STATES DEPARTMENT OF | : | | |
| LABOR, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

GRANTING DEFENDANTS' MOTION TO DISMISS AND
DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**I.  INTRODUCTION**

Plaintiff Bombardier, Inc., is a Canadian company currently embroiled in Department of

Labor administrative proceedings. Bombardier's former employee initiated proceedings in the

Department of Labor by charging the company with discriminatory discharge in violation of the

whistleblower protection provisions of the Wendell H. Ford Aviation Investment and Reform

Act for the 21st Century (AIR21), 49 U.S.C. § 42121. While proceedings in the Department were

still pending, Bombardier filed suit in this Court to enjoin the Department from continuing its

administrative adjudication. Seeking both declaratory and injunctive relief, Bombardier claimed

that the Department acted ultra vires by exercising jurisdiction over Bombardier and thus giving

impermissible extraterritorial application to AIR21.

The Department moved to dismiss Bombardier's complaint, whereas Bombardier moved

for a preliminary injunction. The Department argues that Bombardier failed to exhaust

administrative remedies and therefore must complete AIR21 administrative procedures before

obtaining judicial review. Bombardier contends that its suit is proper—and an injunction against the Department is necessary—because the Department's jurisdiction over Bombardier is ripe for review under the Administrative Procedure Act. The Department's reasoning has merit, whereas Bombardier's does not. Accordingly, the Court will grant the Department's motion to dismiss the complaint and deny as moot Bombardier's motion for a preliminary injunction.

## II.  AIR21 ADMINISTRATIVE PROCEDURES

This case challenges administrative proceedings under the whistleblower protection provisions of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (AIR21), 49 U.S.C. § 42121.[1] It is useful at the outset to review the statutes and regulations authorizing those proceedings.

### A.  AIR21's Whistleblower Protections

49 U.S.C. § 42121 creates a detailed administrative regime to protect whistleblowers who inform their employers or the federal government about violations of federal laws relating to air carrier safety. It declares that

> [n]o air carrier or contractor or subcontractor of an air carrier may discharge an employee or otherwise discriminate against an employee . . . because the employee . . . provided . . . to the employer or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety . . . .

49 U.S.C. § 42121(a). An "air carrier" is "a citizen of the United States undertaking . . . to provide air transportation." *Id.* § 40102(a)(2). Air carriers may be individual citizens of the United States, a partnership of citizens of the United States, or corporations or associations

―――――――――

[1] Pub. L. No. 106-181, § 519(a), 114 Stat. 61, 145–49 (2000) (codified at 49 U.S.C. § 42121).

organized under the laws of the United States or any of the states. *Id.* § 40102(a)(15) (defining

"citizen of the United States"). A "contractor" is "a company that performs safety-sensitive

functions by contract for an air carrier." *Id.* § 42121(e).

### B. Administrative Proceedings in the Department of Labor

#### 1.   Complaint

When someone believes that he or she has been discharged or otherwise discriminated

against in violation of § 42121(a), the person has ninety days from the date of discharge or

discrimination to file a complaint with the Secretary of Labor. *Id.* § 42121(b)(1); 29 C.F.R.

§ 1979.103(d). Department of Labor regulations oblige the complainant to file the complaint

with the Occupational Safety and Health Administration (OSHA) of the United States

Department of Labor. 29 C.F.R. § 1979.103(c).

#### 2.   OSHA Dismissal, or OSHA Investigation and Findings

OSHA then has sixty days to investigate whether reasonable cause exists to believe

discrimination occurred. 49 U.S.C. § 42121(b)(2)(A); 29 C.F.R. §§ 1979.104–1979.105. But if

the complainant fails to make a prima facie showing that protected whistleblower behavior was a

factor contributing to the employer's discriminatory action—or, if the employer shows, by clear

and convincing evidence, that it would have acted the same in the absence of the complainant's

whistleblower behavior—then no investigation is required, and the complaint will be dismissed.

49 U.S.C. § 42121(b)(2)(B); 29 C.F.R. § 1979.104(b)–(d).

When an investigation is warranted, OSHA must conclude the investigation and release

written findings within the sixty-day period prescribed by statute. 49 U.S.C. § 42121(b)(2)(A);

29 C.F.R. § 1979.105(a). If OSHA concludes that reasonable cause exists to believe discrimination

occurred, it must accompany its findings with a preliminary order providing relief to the complainant. 49 U.S.C. § 42121(b)(2)(B); 29 C.F.R. § 1979.105(a)(1).

### 3.   Objections and Request for Hearing

If any party desires review, "including judicial review," of OSHA's findings (or of OSHA's dismissal of the complaint), that party must file objections and request a hearing on the record within thirty days after receiving the findings (or the dismissal). 29 C.F.R. § 1979.106(a); *accord* 49 U.S.C. § 42121(b)(2)(A). In cases where OSHA issued a preliminary order, the order becomes "a final order that is not subject to judicial review" if no party timely files objections and requests a hearing. 49 U.S.C. § 42121(b)(2)(A); 29 C.F.R. § 1979.106(b)(2).

### 4.   Hearing before an Administrative Law Judge

Hearings on objections are held before Department of Labor administrative law judges, and must generally "commence expeditiously." 29 C.F.R. § 1979.107(b). Administrative law judges have broad discretion to limit discovery to expedite the hearing. *Id.* The hearings themselves are "hearings de novo, on the record," but in place of formal rules of evidence, the administrative law judge "may exclude evidence which is immaterial, irrelevant, or unduly repetitious" and will apply "rules or principles designed to assure production of the most probative evidence." *Id.* § 1979.107(b), (d).

### 5.   Decision and Order by the Administrative Law Judge

After the hearing, the administrative law judge must issue a decision that includes findings, conclusions, and an order either prescribing remedies or denying the complaint. *Id.* § 1979.109(a).

6.  Review and Final Order by the Administrative Review Board

If a party desires to seek review, "including judicial review," of the administrative law judge's decision, then that party has ten days to petition the Department of Labor's Administrative Review Board for review. *Id.* § 1979.110(a). If no party timely petitions the Board for review, then the administrative law judge's decision becomes a final order ten business days after the date of the decision. *Id.* § 1979.109(c). At that time, all proceedings before the administrative law judge are considered concluded. *Id.* § 1979.110(c). Even if a party has petitioned the Board for review within the ten-day period, the administrative law judge's order will still become a final order "unless the Board, within thirty days of the filing of the petition, issues an order notifying the parties that the case has been accepted for review." *Id.* § 1979.110(b).

If the Board does accept a decision for review, it must issue its own final decision no more than 120 days after the conclusion of all proceedings before the administrative law judge. *Id.* § 1979.110(c); *see also* 49 U.S.C. § 42121(b)(3)(A) ("Not later than 120 days after the conclusion of a hearing . . . the Secretary of Labor shall issue a final order . . . ."). The Board's final order must either order appropriate remedies or deny the complaint. 49 U.S.C. § 42121(b)(3)A); 29 C.F.R. § 1979.110(d)–(e).

## C.  Judicial Review in a United States Court of Appeals

Only then does AIR21's statutory scheme contemplate judicial review. If a person is "adversely affected or aggrieved" by the final order of an administrative law judge or the Administrative Review Board, then that person has sixty days to file a petition for review "in the United States Court of Appeals for the circuit in which the violation [of the whistleblower protection provisions] allegedly occurred or the circuit in which the complainant resided on the date of such violation." 49 U.S.C. § 42121(b)(4)(A). If a party misses the sixty-day deadline, it

may not seek later judicial review of the final order. *Id.* § 42121(b)(4)(B) ("An order . . . with respect to which review could have been obtained . . . shall not be subject to judicial review in any criminal or other civil proceeding.").

Bombadier, the plaintiff here, has brought this case seeking judicial review while still entangled within AIR21's complex statutory and regulatory framework. The Court now turns to the facts of the case at hand.

## III. FACTUAL AND PROCEDURAL BACKGROUND

### A. Mr. Sobhani's Employment and Termination

According to the Complaint, Plaintiff Bombardier, Inc. is a Canadian company, and its operations are "substantially" conducted within Canada. Compl. ¶¶ 7, 14, ECF No. 1. Bombardier designs and manufactures aircraft; it does not provide air transportation to the public. *Id.* ¶¶ 13, 15.

Bombardier employed Jeffrey A. Sobhani at the beginning of 2014 as an Engineering Specialist working out of the company's facilities in Toronto, Canada. *Id.* ¶¶ 18–19. On January 30, 2014, Mr. Sobhani sent an internal memorandum to Bombardier that raised concerns about the methodology used to interpret flight test data for Bombardier's Q400 aircraft. *Id.* ¶ 21. The data came from tests conducted in Wichita, Kansas in 1998, and the data were stored in Wichita afterward. Decl. Jeff Sobhani, Pl.'s Opp'n Defs.' Mot. Dismiss Ex. E, ECF No. 17-1. On March 7, 2014—five weeks after Mr. Sobhani released his memorandum—Bombardier terminated Mr. Sobhani's employment. Compl. ¶ 24. Bombardier contends that Mr. Sobhani's termination was part of Bombardier's worldwide reduction-in-force, in which Bombardier terminated approximately 1,700 employees. *Id.* ¶ 24.

**B.  Mr. Sobhani's Whistleblower Complaint Against Bombardier**

**at the Federal Aviation Administration**

After his termination, Mr. Sobhani called on United States agencies for aid. He lodged a

whistleblower complaint with the Federal Aviation Administration (FAA) and charged

Bombardier with quality control problems in its Q400 flight testing. *Id.* ¶ 22; Letter from

Dorenda D. Baker to David Trumbull 1, Pl.'s Opp'n Defs.' Mot. Dismiss Ex. B-2, ECF No.

17-1. But the FAA declined to investigate because it decided that investigating the matter would

be beyond the FAA's jurisdiction: it determined that the quality control process in question was

used for Canadian certification, and that "it is not within the jurisdiction of the FAA to

investigate another country's certification program." Compl. ¶ 22.

**C.  Mr. Sobhani's Discrimination Complaint Against Bombardier**

**at the Department of Labor**

Around this time, Mr. Sobhani also initiated administrative proceedings with the

Department of Labor, the defendant in this case.

1.  Complaint

Invoking AIR21's whistleblower protection provisions, Mr. Sobhani filed a

discrimination complaint on March 19, 2014 with the OSHA regional office in Kansas City,

Missouri. *Id.* ¶ 26; Decision & Order Den. Resp't's Mot. Summ. Decision 1, Pl.'s Opp'n Defs.'

Mot. Dismiss Ex. H, ECF No. 17-1. Mr. Sobhani alleged that Bombardier "discriminated against

him by terminating his employment in retaliation for reporting safety of flight issues on the Q400

aircraft." Order Den. Dismissal Compl. Failure State Claim 3, Pl.'s Opp'n Defs.' Mot. Dismiss

Ex. G, ECF No. 17-1.

### 2.  OSHA Dismissal

OSHA dismissed Mr. Sobhani's complaint for lack of jurisdiction in early May 2014. Decision & Order Den. Resp't's Mot. Summ. Decision 2. It found that Bombardier was not covered under AIR21 because Bombardier was "not an air carrier within the meaning of 49 U.S.C. § 42121 and 49 U.S.C. § 40102(a)(2)" and because Mr. Sobhani likewise was "not an employee within the meaning of 49 U.S.C. § 42121." Compl. ¶ 28.

### 3.  Mr. Sobhani's Objections and Request for Hearing

Mr. Sobhani timely objected to the dismissal and requested a hearing before an administrative law judge. *Id.* ¶ 29. He argued that, contrary to OSHA's views on the matter, AIR21 applied to Bombardier: Bombardier offered transportation to Wichita, Kansas in the United States and Bombardier conducted business with United States air carriers, so Bombardier was an "air carrier" or a "contractor" of an air carrier for AIR21 purposes. Order Den. Dismissal Compl. Failure State Claim 2. Similarly, Mr. Sobhani asserted that he merited AIR21 protections because he was an employee of an "air carrier" or a "contractor" of an air carrier. *Id.*

### 4.  Pre-Hearing Proceedings Before Administrative Law Judges

#### a.  Dismissal Denied

Chief Administrative Law Judge Stephen L. Purcell issued a Notice of Docketing and Order to Show Cause on June 19, 2014. Compl. ¶ 30; Notice of Docketing and Order to Show Cause, Pl.'s Opp'n Defs.' Mot. Dismiss Ex. F, ECF No. 17-1. He ordered the parties to show cause within thirty days for why the case should not be dismissed for lack of jurisdiction. Notice of Docketing and Order to Show Cause 2 ("If Bombardier is not an employer and Sobhani is not an employee as defined by AIR21, then this case must be dismissed . . . .").

Chief Judge Purcell ultimately declined to dismiss the complaint. Compl. ¶ 31. His July 31, 2014 order emphasized "the minimal pleading requirements" in Department of Labor whistleblower protection proceedings. Order Den. Dismissal Compl. Failure State Claim 5. The judge's written decision explained that Mr. Sobhani had stated sufficient facts to provide "fair notice" that, for AIR21 purposes, Bombardier is a contractor and Sobhani is an employee of a contractor. *Id.* The decision did, however, note that "[t]o the extent further development of the evidentiary record prior to trial shows that Sobhani's allegations are untrue, [Bombardier] is entitled to seek summary judgment." *Id.*

### b. Summary Decision Denied

After the case was assigned to Administrative Law Judge Scott R. Morris, Bombardier proceeded to file a motion for summary judgment on October 2, 2014. Compl. ¶¶ 32–33. Judge Morris construed the motion as one for "summary decision," which is the relevant motion in hearings before administrative law judges. Decision & Order Den. Resp't's Mot. Summ. Decision 2 n.6; *see* 29 C.F.R. § 18.72 ("A party may move for summary decision . . . .").

Judge Morris denied Bombardier's motion on November 4, 2014. Compl. ¶ 36. Although Bombardier and the judge agreed that AIR21's whistleblower protection provisions do not apply extraterritorially, the judge found that the record at the time showed "a significant nexus" between Bombardier and the United States. Decision & Order Den. Resp't's Mot. Summ. Decision 15. In particular, Judge Morris found the fact that Q400 test flights occurred in or around Wichita, Kansas to be an "essential element" that created a "substantial geographic nexus between the alleged violations underlying [Mr. Sobhani's] complaint and the territorial borders of the United States." *Id.* at 14. The judge therefore held that Mr. Sobhani's allegations sought a

domestic application of AIR21, which the presumption against extending American laws abroad would not forbid. *Id.* at 15.

The judge qualified his findings and explained that they did not mean that Mr. Sobhani was entitled to relief, or that he had even established a prima facie case. *Id.* He explained that his holding was "narrowly tailored" to the issues presented in Bombardier's motion and based on the record at the time. *Id.* Put another way, to resolve genuine issues of material fact, Judge Morris held that Mr. Sobhani's complaint deserved "a full and fair development" before final adjudication. *Id.* The judge also noted that the parties were still free to submit dispositive motions during the discovery process. *Id.* at 15 n.36.

### c.  Reconsideration and Certification for Interlocutory Appeal Denied

Unhappy with the summary decision denial and aware that the denial was a pre-hearing interlocutory decision, Bombardier filed a motion on November 14, 2014 that requested Judge Morris to certify his denial for interlocutory review with the Administrative Review Board. Compl. ¶ 44. Bombardier's motion argued that its case was one of first impression and that the record did not support the contacts between Bombardier and the United States that the judge noted in his written decision. Order Den. Resp't's "Motion for Certification or, Alternatively, Reconsideration" 3, Pl.'s Opp'n Defs.' Mot. Dismiss Ex. I, ECF No. 17-1. Accordingly, Bombardier requested leave to file an interlocutory appeal to the Administrative Review Board, as well as a stay of the discovery process pending the Board's decision. *Id.* In the alternative, Bombardier asked the judge to reconsider his decision. *Id.*

Judge Morris denied all of Bombardier's requests. Compl. ¶ 45. Explaining that the case's unresolved issues were questions of fact that the parties must develop through continued litigation, the judge found no basis to certify the case for interlocutory appeal. Order Den.

Resp't's "Motion for Certification or, Alternatively, Reconsideration" 4. He likewise affirmed

his prior ruling denying summary decision. *Id.* at 6. The judge emphasized the standard of review

undergirding that ruling: "*when viewed in a light most favorable to [Mr. Sobhani]*, the

preponderance of the evidence . . . before me show[ed] that the essential elements of the

complaint . . . demonstrate[d] a significant nexus with the United States." *Id.*

### d.  Discovery Pending

Discovery came next, but Bombardier continued to resist the administrative process. The

company filed a motion to stay the proceedings pending mediation, but Judge Morris denied the

motion in March 2015. Pl.'s Opp'n Defs.' Mot. Dismiss 9, ECF No. 17; Order Den. Resp't's

Mot. Stay Proceedings, Pl.'s Opp'n Defs.' Mot. Dismiss Ex. K, ECF No. 17-1. The judge cited

AIR21's mandate that "hearings shall be conducted expeditiously," and he inferred that staying

the proceedings would be at odds with "the letter and spirit" of the statute. 49 U.S.C.

§ 42121(b)(2)(A); Order Den. Resp't's Mot. Stay Proceedings 4.

Meanwhile, Bombardier had failed to produce documents requested by Mr. Sobhani, and

Mr. Sobhani filed a motion to compel production. Mem. Supp. Defs.' Mot. Dismiss 8, ECF No.

16-1. To justify its resistance, Bombardier contended that Sobhani had requested "highly

sensitive trade secrets" and an "immense" amount of data stored in servers located worldwide.

Pl.'s Opp'n Defs.' Mot. Dismiss 9–10. But Judge Morris sided with Mr. Sobhani again: at a

hearing on the motion to compel on March 20, 2015, the judge ordered Bombardier to produce

nearly all the documents Mr. Sobhani had requested. *Id.*

Discovery is still ongoing; the current discovery deadline is January 29, 2016. Joint Mot.

Proposed Briefing Schedule 1, ECF No. 20. The administrative law judge has postponed the

hearing on the merits until May 9, 2016. *Id.* Thus, Bombardier's administrative proceedings are

still interlocutory. Until the administrative law judge holds the hearing on the merits, neither Mr.

Sobhani nor Bombardier will have a final order that is appealable to the Department's

Administrative Review Board or to a United States Court of Appeals. *See generally* 49 U.S.C.

§ 42121(b).

### D.  Bombardier's Complaint against the Department of Labor
### and Proceedings in this Court

Bombardier filed suit in this Court against the Department of Labor in April 2015, after

the administrative law judge ordered the company to comply with Mr. Sobhani's discovery

requests. *See* Compl. ¶¶ 41–63. The company's Complaint charged the Department with

exceeding the bounds of its statutory authority: Bombardier contended that, by exercising

jurisdiction over Bombardier, the Department was giving impermissible extraterritorial

application to AIR21. *Id.* ¶¶ 48–57. Bombardier also alleged that the Department's assertion of

authority was a final agency action, suitable for review in this Court. *Id.* ¶¶ 58–60. To right the

wrongs purportedly done to it, Bombardier sought a declaration that AIR21 applies only

domestically, that it applies only to domestic contractors and subcontractors to air carriers, and

that it therefore does not authorize the Department to adjudicate Mr. Sobhani's complaint against

Bombardier. *Id.* ¶¶ 61–63. And more importantly, Bombardier sought an injunction against the

Department that would bar it from exercising further adjudicative authority over Bombardier and

Mr. Sobhani's complaint. *Id.* ¶¶ 6, B.

The Department has moved to dismiss Bombardier's Complaint. *See* Defs.' Mot.

Dismiss, ECF No. 16. The Department argues that Bombardier failed to exhaust administrative

remedies and must complete the Department's administrative procedures before obtaining

judicial review. *See* Mem. Supp. Defs.' Mot. Dismiss 9–29.

Meanwhile, Bombardier has moved for a preliminary injunction. *See* Pl.'s Mot. Prelim. Inj., ECF No. 19.[2] Following the reasoning in its Complaint, Bombardier's motion maintains that the Department's adjudication of Mr. Sobhani's AIR21 complaint is ultra vires, that the Department's exercise of adjudicative authority is reviewable now, and that an injunction is necessary. *See* Mem. Supp. Pl.'s Mot. Prelim. Inj. 9–27, ECF No. 19-1.

Because the Court agrees with the Department's view of this case, the Court will grant the motion to dismiss the complaint and deny as moot Bombardier's motion for a preliminary injunction.

## IV.  ANALYSIS

The Department of Labor offers two reasons to dismiss the Complaint: (1) Bombardier has failed to exhaust administrative remedies, and (2) the existing administrative scheme, which allows Bombardier to seek review of a final Department order in a United States Court of Appeals, precludes review by a district court now. *See* Defs.' Mot. Dismiss 9–25. Because the Court finds the Department's second argument persuasive, the Court need not address the Department's exhaustion argument to dismiss Bombardier's complaint.

### A.  Statutory Preclusion

When Congress intends for a "special statutory review scheme" to be the exclusive means of obtaining judicial review, and when that review scheme does not contemplate district court review, this Court lacks jurisdiction. *See Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015).

---

[2] Bombardier's first motion for a preliminary injunction was filed contemporaneously with its Complaint. *See* Pl.'s Mot. Prelim. Inj., ECF No. 3. The Court denied that motion without prejudice after the parties agreed to submit briefing on a motion to dismiss first. *See* May 8, 2015 Minute Order. Bombardier's second motion for a preliminary injunction, filed on September 30, 2015, is currently pending before the Court. *See* Pl.'s Mot. Prelim. Inj., ECF No. 19.

The AIR21 whistleblower protection statute creates a statutory scheme whereby judicial review of final orders occurs in a United States Court of Appeals. *See* 49 U.S.C. § 42121(b)(4). As the Department correctly argues, the statute therefore precludes judicial review in the federal district courts. *See* Mem. Supp. Defs.' Mot. Dismiss 24–26, ECF No. 16-1.

### 1.  Legal Standard

Federal courts are courts of limited jurisdiction, and they possess "only that power authorized by Constitution and statute." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Thus, "[w]ithin constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting *Bowles v. Russell*, 551 U.S. 205, 212, (2007)).

To survive a motion to dismiss for lack of jurisdiction, a plaintiff bears the burden of establishing that a court has jurisdiction over its claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998) (standing and Article III jurisdiction); *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007) (subject-matter jurisdiction). To determine whether jurisdiction exists, a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).

The D.C. Circuit has recently explained that when a "special statutory review scheme" exists, "it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." *Jarkesy*, 803 F.3d at 15 (quoting *City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C. Cir. 1979)). To determine whether Congress

intended a statutory scheme to be the exclusive means of obtaining judicial review, this Court

must find that "(i) such intent is 'fairly discernible in the statutory scheme,' and (ii) the litigant's

claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'" *Id.*

(alteration in original) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212

(1994)).

## 2.  Fairly Discernible Intent to Preclude

To determine whether it is "fairly discernible" that Congress precluded district court

jurisdiction, this Court must examine the statutory review scheme's text, structure, and purpose.

*Elgin v. Dep't of the Treasury*, 132 S. Ct. 2126, 2133 (2012). As discussed above, the AIR21

whistleblower protection statute creates a detailed review scheme, with multiple opportunities for

administrative appeal before judicial review is possible. *See* 49 U.S.C. § 42121(b); *see also*

*supra* Part II. Its structure has much in common with other review schemes that preclude

premature district court review.

The Federal Mine Safety and Health Amendments Act of 1977 (Mine Act)[3] created one

such scheme. The Mine Act gave the Department of Labor authority to cite and sanction mine

operators for health and safety violations. *See* 30 U.S.C. §§ 814(a), 815(a), 820. It also

established a detailed review scheme whereby mine operators may challenge those citations. *See*

30 U.S.C. §§ 815, 816, 823. When the scheme came before the Supreme Court for review in

*Thunder Basin Coal Co. v. Reich*, the Supreme Court held that the review scheme precluded

district courts from exercising jurisdiction over challenges to the Department's decisions. *See*

510 U.S. 200, 202, 207–16 (1994).

---

[3] Pub. L. No. 95-164, 91 Stat. 1290 (1977) (codified in scattered sections of 30 U.S.C.).

The Mine Act review scheme in *Thunder Basin* has the same structure as the AIR21 review scheme here. Both review schemes begin with a first-level Department of Labor decision: a decision to issue a Mine Act citation with proposed penalties, *see* 30 U.S.C. §§ 814(a), 815(a), or a decision under AIR21 to issue a preliminary order or deny a complaint, *see* 49 U.S.C. § 42121(b)(2)(A). Both schemes then give an aggrieved party thirty days to challenge that initial decision and seek review before an administrative law judge. *See* 30 U.S.C. § 815(a); 42 U.S.C. § 42121(b)(2)(a); 29 C.F.R. §§ 1979.106–1979.109. Failure to do so in either review scheme means the initial Department order and penalties become final and exempt from later review. *See* 30 U.S.C. § 815(a); 42 U.S.C. § 42121(b)(2)(A); 29 C.F.R. § 1979.106(b)(2). If a party obtains review before an administrative law judge, both review schemes then allow for another administrative appeal: to the Federal Mine Safety and Health Review Commission in Mine Act cases, or to the Department of Labor's Administrative Review Board in AIR21 whistleblower protection cases. *See* 30 U.S.C. § 815(d); 29 C.F.R. § 1979.110. Both schemes withhold judicial review until after this second administrative appeal, and even then, they authorize review only in a United States Court of Appeals—not a federal district court. *See* 30 U.S.C. § 816; 42 U.S.C. § 42121(b)(4)(A).

In *Thunder Basin*, the Supreme Court held that the Mine Act's structure "demonstrates that Congress intended to preclude" a challenge brought by a mine operator who sought district court review before completing the administrative process. 510 U.S. at 208–09. The Court explained that the Mine Act "expressly authorizes district court jurisdiction in only two provisions"; those two provisions empower the Secretary of Labor to enforce its orders and to coerce payment of penalties. *Id.* at 209; *see also* 30 U.S.C. §§ 818(a), 820(j). Because mine

operators "enjoy no corresponding right," the Court held that the Mine Act's text and structure favored precluding district court jurisdiction. *Thunder Basin*, 510 U.S. at 207–09.

The AIR21 scheme is similar. It authorizes district court jurisdiction in just two provisions: one allows the Secretary of Labor to enforce a Department order, and the other allows the "person on whose behalf an order was issued" to do the same. 49 U.S.C. § 42121(b)(5), (b)(6)(A). Given the many resemblances between the AIR21 scheme and the Mine Act scheme, this Court follows *Thunder Basin* and finds that AIR21's structure favors precluding this Court's jurisdiction.

The Supreme Court's more recent decision in *Elgin v. Department of the Treasury*, 132 S. Ct. 2126 (2012), provides another point of comparison. *Elgin*, like *Thunder Basin*, held that a statutory review scheme—the one created by the Civil Service Reform Act of 1978 (CSRA)[4] to review major adverse employment actions taken against federal employees—provided the exclusive avenue to judicial review and thus precluded district court jurisdiction. *See* 132 S. Ct. at 2130, 2132. The CSRA scheme, like the Mine Act scheme in *Thunder Basin*, mirrors the AIR21 whistleblower protection scheme in its structure. The scheme gives an aggrieved employee the right to a "written decision" from the employing agency taking the adverse action—which resembles, procedurally, the AIR21 preliminary order from OSHA. *See* 5 U.S.C. § 7513(b)(4); *cf.* 42 U.S.C. § 42121(b)(2)(A); 29 U.S.C. §§ 1979.104–1979.105. After the employing agency takes the adverse action against the employee, the CSRA gives the employee the right to appeal the agency's action to the Merit Systems Protection Board, which may initially refer the appeal to an administrative law judge before review by the full Board. *See* 5 U.S.C. §§ 7513(d), 7701(b)(1); 5 C.F.R. §§ 1201.111–1201.114. This structure is familiar;

---

[4] Pub. L. No. 95-454, 92 Stat. 1111 (1978) (codified in scattered sections of 5 U.S.C.).

AIR21 also gives aggrieved parties the right to appeal adverse agency decisions to an administrative law judge and then to a higher board (the Administrative Review Board). *See* 42 U.S.C. § 42121(b)(2)–(3); 29 C.F.R. §§ 1979.106–1979.110. Lastly, like AIR21, the CSRA makes judicial review of a Merit Systems Protection Board decision available in a federal court of appeals, and not in federal district court. *See* 5 U.S.C. § 7703; 49 U.S.C. § 42121(b)(4). The Supreme Court held that the CSRA's "elaborate" framework, set out in "painstaking detail," showed Congress's intent to foreclose extrastatutory review. *Elgin*, 132 S. Ct. at 2133–34 (quoting *United States v. Fausto*, 484 U.S. 439, 443 (1988)). This Court does the same for AIR21 here.

The D.C. Circuit's recent opinion in *Jarkesy v. SEC* points the same direction. There, the D.C. Circuit held that the statutory regime established for Securities and Exchange Commission administrative proceedings comes with a fairly discernible intent to preclude suits in federal court. *Jarkesy v. SEC*, 803 F.3d 9, 15–17 (D.C. Cir. 2015). The securities laws allow the Commission to prosecute securities law violators in an administrative proceeding. *Id.* at 12 (citing 15 U.S.C. §§ 78u-2, 78u-3). When the Commission does so, it may designate an administrative law judge to preside over an initial hearing. *Id.* (citing 17 C.F.R. § 201.110). Parties may then appeal the administrative law judge's decision to the full Commission; doing so is a prerequisite to later judicial review. *Id.* (citing 17 C.F.R. § 201.410(a)); 17 C.F.R. § 201.410(e). After the Commission issues a final order, an "'aggrieved' respondent may seek review in [the D.C. Circuit] or the circuit where he resides or has his principal place of business." *Id.* at 13 (quoting 15 U.S.C. § 78y(a)(1)).

Again, the statutory review scheme in *Jarkesy* has a familiar structure: agency action, then review before an administrative law judge, then review by a higher agency board or

commission, then finally judicial review. It echoes the statutory review schemes in *Elgin*, *Thunder Basin*, and indeed, AIR21. *Elgin*, *Thunder Basin*, and *Jarkesy* all hold that statutes structured this way preclude district court jurisdiction, and this Court sees no reason to part ways with precedent. The AIR21 whistleblower protection scheme, like the other statutory review schemes, carries a fairly discernible congressional intent to preclude extrastatutory district court suits.[5]

　　3.  Claims of the Type Intended To Be Reviewed Within the Statutory Structure

　　　　The second prong of the statutory preclusion analysis directs this Court to examine whether "the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'" *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (alteration in original) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994)). Bombardier's claims are.

　　　　Claims are presumed to escape preclusion "if a finding of preclusion could foreclose all meaningful judicial review; if the suit is wholly collateral to a statute's review provisions; and if the claims are outside the agency's expertise." *Jarkesy*, 803 F.3d at 17 (quoting *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489–90 (2010)). These three considerations do not comprise "a strict mathematical formula," but instead are "general guideposts useful for

---

　　　　[5] The Supreme Court has at times looked to legislative history in this prong of the statutory preclusion inquiry. *See, e.g.*, *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 209–12 (1994) (examining the Mine Act's legislative history). Here, however, the AIR21 whistleblower protection statute's sparse legislative history does not affect the Court's analysis.

　　　　AIR21 as a whole was enacted to improve airline safety, which was "of paramount concern" to Congress at the time of AIR21's passage. *See* 146 Cong. Rec. H1002 (daily ed. Mar. 15, 2000) (statement of Rep. Reynolds). In line with that goal, the whistleblower protection statute sought to allow airline employees to "reveal legitimate safety problems without fear of retaliation." *See id.* at H1008 (statement of Rep. Boehlert); 145 Cong. Rec. H4256 (daily ed. June 15, 1999) (statement of Rep. Reynolds).

　　　　Because AIR21's sparse legislative history does not clearly favor or disfavor precluding district court jurisdiction, the Court does not base its opinion on it.

channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design." *Id.* None of the considerations apply here.

### a.  Meaningful Review Still Possible

Requiring Bombardier to continue litigating before the Department does not foreclose all meaningful judicial review. Indeed, the statute expressly allows for judicial review after the Department issues its final order. *See* 49 U.S.C. § 42121(b)(4).

Even though Bombardier must wait to obtain that review, delayed judicial review does not foreclose meaningful review in the meantime. *Jarkesy* is instructive on this point: when a party can have his claims heard administratively without bringing a "Trojan-horse challenge" to an unrelated agency action and without subjecting himself to unnecessary sanction, then the administrative scheme "presents an entirely 'meaningful' avenue of relief." *Jarkesy v. SEC*, 803 F.3d 9, 20 (D.C. Cir. 2015) (distinguishing *Jarkesy* from *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010)). In other words, a party lacks meaningful review of its claims only when administrative procedures create burdensome barriers to those claims being heard at all. *See, e.g.*, *Free Enterprise Fund*, 561 U.S. at 490–91 (explaining how, when the Securities and Exchange Commission's administrative review scheme "provides only for judicial review of *Commission* action, and not every [Public Company Accounting Oversight] Board action is encapsulated in a final Commission order or rule," the administrative scheme is not a "meaningful" avenue of relief for constitutional claims challenging the Board's existence).

That is not the case here. Bombardier's challenge to the Department's jurisdiction over it has been adjudicated (and readjudicated) by the Department since Mr. Sobhani filed his initial complaint with OSHA. Bombardier's jurisdictional challenge prompted OSHA to dismiss Mr.

Sobhani's complaint in May 2014, and multiple administrative law judge decisions addressed it afterward. *See* Order Den. Dismissal Compl. Failure State Claim 5, Pl.'s Opp'n Defs.' Mot. Dismiss Ex. G, ECF No. 17-1; Decision & Order Den. Resp't's Mot. Summ. Decision 2, 15, Pl.'s Opp'n Defs.' Mot. Dismiss Ex. H, ECF No. 17-1; Order Den. Resp't's "Motion for Certification or, Alternatively, Reconsideration" 6, Pl.'s Opp'n Defs.' Mot. Dismiss Ex. I, ECF No. 17-1. Furthermore, AIR21's applicability to Bombardier remains an open issue for future Department decisions. As the administrative law judge put it, discovery through the administrative process is necessary because the Department "is not yet equipped to provide final resolution" on the jurisdictional issue. Order Den. Resp't's "Motion for Certification or, Alternatively, Reconsideration" 5. Because the Department will continue to consider AIR21's applicability to Bombardier, and because Bombardier may appeal an adverse decision to a court of appeals, Bombardier's claim about AIR21's applicability can receive meaningful review through the administrative process.

Nor does the burden of discovery compliance make that review less meaningful. Bombardier contends that "[s]ubstantial compliance with the . . . order compelling the production of data and documents would, at a minimum, cost Bombardier hundreds of thousands of dollars." Compl. ¶ 42. But though the burden of discovery compliance is not to be underestimated, it does not signify an absence of meaningful judicial review. *See Jarkesy v. SEC*, 803 F.3d 9, 25 (D.C. Cir. 2015) (observing that harm from the administrative process "does not mean [the plaintiff's] claims should receive preemptive resolution in a district court"). As the Supreme Court has repeatedly affirmed, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)). Rather, "the

expense and annoyance of litigation is part of the social burden of living under government."
*Jarkesy*, 803 F.3d at 26 (quoting *Standard Oil*, 449 U.S. at 244).

Though Bombardier objects that the *United States* government's administrative process is
out of line here, its objection highlights exactly why that process continues—so that the
Department can determine whether Bombardier's actions fall under United States regulatory
authority. *See* Order Den. Resp't's "Motion for Certification or, Alternatively, Reconsideration"
4–5. Like the *Jarkesy* plaintiffs, the only harms that Bombardier faces from the administrative
process are "the burdens abided by any respondent in an enforcement proceeding." *Jarkesy v.
SEC*, 803 F.3d 9, 28 (D.C. Cir. 2015). "The judicial system tolerates those harms, and they are
insufficient . . . to infer an exception to an otherwise exclusive scheme." *Id.*

Bombardier does not prove otherwise by contending that, given the Canadian genesis of
Mr. Sobhani's termination, AIR21's judicial review provision would not allow any federal court
of appeals to review the Department's final order, and thus later *judicial* review is foreclosed.
*See* Pl.'s Opp'n Defs.' Mot. Dismiss 17, ECF. No. 17 (arguing that, because Mr. Sobhani's
termination happened in Canada and Mr. Sobhani resided in Canada when he was terminated,
"there is no Court of Appeals that would have jurisdiction"). AIR21 allows parties aggrieved by
a final Department order to obtain review in just two possible United States Courts of Appeals:
(1) the Court of Appeals "for the circuit in which the violation, with respect to which the order
was issued, allegedly occurred," or (2) the Court of Appeals for "the circuit in which the
complainant resided on the date of such violation." 49 U.S.C. § 42121(b)(4)(A). But this
limitation does not foreclose Bombardier from obtaining meaningful judicial review. If the
Department maintains its current position that Mr. Sobhani's allegations "warrant a domestic
application" of AIR21, then the domestic location where the Department finds "a significant

nexus with the United States" could provide the requisite toehold for federal appellate review. *See* Mem. Supp. Defs.' Mot. Dismiss 25, ECF No. 16-1; Decision & Order Den. Resp't's Mot. Summ. Decision 15, Pl.'s Opp'n Defs.' Mot. Dismiss Ex. H, ECF No. 17-1. Bombardier has not proven otherwise.

Bombardier also errs when it assumes that AIR21's judicial review provision limits the appellate courts' *jurisdiction*. 49 U.S.C. § 42121(b)(4)(A) instead speaks to *venue*, in line with courts' interpretations of similar judicial review provisions.

For instance, the D.C. Circuit has repeatedly held in the National Labor Relations Board (NLRB) context that "all intermediate federal courts have jurisdiction to review and enforce orders of the NLRB," because the statutes limiting judicial review to certain courts "are concerned only with venue." *NLRB v. Wilder Mfg. Co.*, 454 F.2d 995, 998 n.12 (D.C. Cir. 1971) (per curiam); *accord Fed. Labor Relations Auth. v. Soc. Sec. Admin.*, 846 F.2d 1475, 1478–79 (D.C. Cir. 1988) (per curiam) (referring to the judicial review provisions as "venue provisions"); *see also Brentwood at Hobart v. NLRB*, 675 F.3d 999, 1002 (6th Cir. 2012) (holding that the review limitations "go to venue, not subject-matter jurisdiction"). A person aggrieved by NLRB final orders may obtain judicial review (1) in the circuit where the unfair labor practice "was alleged to have been engaged in," (2) in the circuit where the aggrieved person "resides or transacts business," or (3) "in the United States Court of Appeals for the District of Columbia." 29 U.S.C. § 160(f). AIR21 review is structured similarly: a person aggrieved by the Administrative Review Board's final order may obtain judicial review in the circuit where the statutory violation allegedly occurred, and in the circuit where the complainant resided at the time of the violation. *See* 49 U.S.C. § 42121(b)(4)(A). That the NLRB review provision is a

venue provision rather than a jurisdictional provision indicates that AIR21's review provision is also a venue provision.

Courts have also interpreted other similar provisions as venue provisions, not jurisdictional ones. *See, e.g.*, *Stern v. Marshall*, 131 S. Ct. 2594, 2606 (2011) (holding that 28 U.S.C. § 157(b)(5) "is not jurisdictional");[6] *Panhandle E. Pipe Line Co. v. Fed. Power Comm'n*, 324 U.S. 635, 638–39 (1945) (holding that section 19(b) of the Natural Gas Act "goes to venue not to jurisdiction");[7] *U.S. Sec. & Exchange Comm'n v. E-Smart Techs., Inc.*, 926 F. Supp. 2d 231, 236 (D.D.C. 2013) (interpreting 15 U.S.C. §§ 77v(a), 78aa as venue provisions);[8] *Noisette*

---

[6] 28 U.S.C. § 157(b)(5) declares that, in the bankruptcy context, "personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose."

[7] Section 19(b) of the Natural Gas Act declares that "[a]ny party . . . aggrieved by an order issued by the [Federal Power] Commission . . . may obtain a review of such order in the circuit court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia . . . ." Natural Gas Act, Pub. L. No. 75-688, § 19(b), 52 Stat. 821, 831 (1938) (codified as amended at 15 U.S.C. § 717r(b)).

The Supreme Court read the statute "to invest *all* intermediate federal courts with the power to review orders of the Commission." *Panhandle E. Pipe Line Co. v. Fed. Power Comm'n*, 324 U.S. 635, 638 (1945) (emphasis added). The Court justified its holding by explaining that "[v]enue relates to the convenience of litigants" and "[t]he provisions of § 19(b) plainly are of that character." *Id.* at 639.

[8] 15 U.S.C. § 77v governs "[j]urisdiction of offenses and suits" under the Securities Act. *See* 15 U.S.C. § 77v (heading); *U.S. Sec. & Exchange Comm'n v. E-Smart Techs., Inc.*, 926 F. Supp. 2d 231, 236–37 (D.D.C. 2013). It specifies that "[t]he district courts of the United States . . . shall have exclusive jurisdiction," but it also declares that suits "may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place." 15 U.S.C. § 77v(a). Although the two statements are found in the same subsection, this Court interpreted the second as a venue provision. *See E-Smart Techs., Inc.*, 926 F. Supp. 2d at 236–37.

15 U.S.C. § 78aa governs "[j]urisdiction of offenses and suits" under the Securities Exchange Act. *See* 15 U.S.C. § 78aa (heading); *E-Smart Techs., Inc.*, 926 F. Supp. 2d at 236–37. It likewise begins by specifying that "[t]he district courts of the United States . . . shall have exclusive jurisdiction" before declaring that suits "may be brought in the district wherein any act or transaction constituting the violation [of the Securities Exchange Act] occurred . . . or in the district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C.

*v. Geithner*, 693 F. Supp. 2d 60, 63 (D.D.C. 2010) (interpreting the latter portion of 42 U.S.C.

§ 2000e-5(f)(3) as a venue provision).[9] At times, Congress has also clarified that review

provisions like these are venue provisions. *See, e.g.*, 12 U.S.C. § 94 (labeling with the heading

"[v]enue of suits" a statute declaring that certain actions involving banks shall be brought in the

district, county, or city where the bank's "principal place of business is located"); 40 U.S.C.

§ 3133(b)(3) (labeling with the subheading "[v]enue" a provision declaring that certain civil

actions involving federal contractors must be brought "in the United States District Court for any

district in which the contract was to be performed and executed").[10] AIR21's judicial review

provision falls in line as one of many provisions specifying the venues available for judicial

review of agency action.

Because AIR21's judicial review provision is, therefore, not jurisdictional, it cannot

foreclose Bombardier from obtaining judicial review of an adverse final Department order in all

of the courts of appeals. Just as the D.C. Circuit found that the NLRB review provision gave "all

intermediate federal courts" jurisdiction to review NLRB orders, *NLRB v. Wilder Mfg. Co.*, 454

---

§ 78aa(a). Again, although the statements are in the same subsection, this Court interpreted the statements about where suits may be brought as venue provisions. *See E-Smart Techs., Inc.*, 926 F. Supp. 2d at 236–37.

[9] 42 U.S.C. § 2000e-5(f)(3) declares that, though each federal district court "shall have jurisdiction," employment discrimination suits may be brought in a district court "in the State in which the unlawful employment practice is alleged to have been committed," "in the judicial district in which the employment records relevant to such practice are maintained," "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice," or if all of these options are not viable, "within the judicial district in which the respondent has his principal office."

[10] *See generally Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("[S]tatutory titles and section headings 'are tools available for the resolution of a doubt about the meaning of a statute.'" (internal quotation marks omitted) (quoting *Porter v. Nussle*, 534 U.S. 516, 528 (2002))).

F.2d 995, 998 n.12 (D.C. Cir. 1971), so too here, the AIR21 review provision gives all the courts

of appeal jurisdiction to review final AIR21 whistleblower protection orders.

Of course, Bombardier can echo its jurisdictional argument by asserting that 49 U.S.C.

§ 42121(b)(4)(A) still prevents judicial review, because no proper venue would exist for that

review. [11] But venue, unlike subject matter jurisdiction, is a waivable defense. *See Neirbo Co. v.*

*Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167 (1939) ("Being a privilege, it may be lost.");

*see also Citizens & S. Nat'l Bank v. Bougas*, 434 U.S. 35, 38 (1977) (extending the waiver

principle to cases brought under 12 U.S.C. § 94, a statutory venue provision that resembles 49

U.S.C. § 42121(b)(4)(A)).

If Bombardier eventually seeks review in the circuit where the Department finds "a

significant geographic nexus with the United States," *see* Decision & Order Den. Resp't's Mot.

Summ. Decision 15, improper venue would become a problem only if Mr. Sobhani or the

---

[11] Along these lines, the Supreme Court has articulated that "Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other." *Smith v. United States*, 507 U.S. 197, 203 (1993) (quoting *Brunette Machine Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 710 n.8 (1972)). "Thus, in construing venue statutes it is reasonable to prefer the construction that avoids leaving such a gap." *Brunette Machine Works*, 406 U.S. at 710 n.8. In *Smith*, the Supreme Court applied this principle to hold that the Federal Tort Claims Act (FTCA) cannot apply to claims arising in Antarctica, because applying the FTCA to Antarctica claims would create a venue gap. *See* 507 U.S. at 202–03 (explaining that, if the FTCA applied to Antarctica claims, "no venue would exist unless the claimant happened to reside in the United States").

Apart from the reasons expressed below to reject the lack-of-venue argument, *Smith* is inapposite to Bombardier's case because it arises from a different legal context. There, the issue was whether to apply the FTCA abroad; here, the issue is whether Mr. Sobhani's complaint "involves a domestic application" of AIR21. Decision & Order Den. Resp't's Mot. Summ. Decision 15. The Department has already declared that "AIR21's whistleblower provision does not have extraterritorial reach." *Id.* at 9. Thus, if Bombardier is liable under the statute, its liability must arise from conduct committed within the United States, *see id.* at 10, which means that under 49 U.S.C. § 42121(b)(4)(A) a circuit "in which the violation . . . allegedly occurred" would exist. No venue gap is possible here, so *Smith* does not bear on this case.

Department raised it.[12] Otherwise, Mr. Sobhani and the Department would waive the venue

objection. *See Barnstead Broad. Co. v. Offshore Broad. Co.*, 869 F. Supp. 35, 38 (D.D.C. 1994)

("An objection to . . . venue may be waived 'by submission [in a cause] through conduct.'"

(quoting *Manchester Knitted Fashions v. Amalgamated Cotton Garment Fund*, 967 F.2d 688,

692 (1st Cir. 1992))).

   And Bombardier could argue that Mr. Sobhani and the Department waived any objection

to venue through their conduct during the administrative proceeding. For if Mr. Sobhani and the

Department conclude that Mr. Sobhani's claims have a domestic basis, the law does not allow

them to change their position to prevent review. In the Supreme Court's words, "where a party

assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he

may not thereafter, simply because his interests have changed, assume a contrary position,

especially if it be to the prejudice of the party who has acquiesced in the position formerly taken

by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (alteration omitted) (quoting *Davis

v. Wakelee*, 156 U.S. 680, 689 (1895)); *see also Aera Energy LLC v. Salazar*, 642 F.3d 212, 219

(D.C. Cir. 2011) (applying this principle to bar parties from adopting a theory inconsistent with

the one they advanced in the administrative proceeding before). Assuming Bombardier seeks

review in the circuit where the Department found a domestic basis for AIR21 jurisdiction, a

---

   [12] A party petitioning a court of appeals for review under 49 U.S.C. § 42121(b)(4)(A)
names the Department of Labor, and sometimes the other party to the administrative proceeding,
as a respondent in the petition for review. *See, e.g.*, *Misuzawa v. U.S. Dep't of Labor*, 524 F.
App'x 443, 443 (10th Cir. 2013) (naming the Department as the respondent, and showing the
employer United Parcel Service's involvement as an intervenor); *Yadav v. L-3 Commc'ns Corp.*,
462 F. App'x 533, 533 (6th Cir. 2012) (naming both the Department and the employer L-3
Communications Corporation as respondents); *Hoffman v. Solis*, 636 F.3d 262, 262 (6th Cir.
2011) (naming the Secretary of Labor as the respondent); *Williams v. Dep't of Labor*, 370 F.
App'x 97, 97 (Fed. Cir. 2010) (per curiam) (naming the Department as the respondent); *Vieques
Air Link, Inc. v. U.S. Dep't of Labor*, 437 F.3d 102, 102 (1st Cir. 2006) (per curiam) (same).

venue objection from Mr. Sobhani or the Department would not square with their prior position that Bombardier's liability arises from domestic activity. Because a venue objection would therefore lack merit, venue would not obstruct Bombardier's judicial review.[13]

AIR21's judicial review provision therefore does not prevent Bombardier from obtaining meaningful judicial review of an eventual final order from the Department. And of course, Bombardier may not even need judicial review. After the hearing on the merits, the Department's administrative law judge might ultimately agree with Bombardier and find that AIR21 cannot apply to Bombardier. Or the Administrative Review Board could rule for Bombardier on its review of the matter. Either of these outcomes would moot Bombardier's objection and eliminate Bombardier's wish for judicial review. Bombardier's situation shows us precisely why courts tend to "await the termination of agency proceedings": so that the agency proceedings may "obviate all occasion for judicial review." *Jarkesy v. SEC*, 803 F.3d 9, 27 (D.C. Cir. 2015) (quoting *Standard Oil*, 449 U.S. at 244 n.11). This is "a *feature*" of the administrative process, "not a bug." *Id.*

### b.  Suit Not Wholly Collateral

Bombardier also cannot defend its position by arguing that its claims are wholly collateral to the AIR21 whistleblower protection statute's review provisions. A suit is not "wholly collateral" to a statute's review provisions when it "attacks the [agency's] decision to

---

[13] Even if Bombardier erroneously sought review in a circuit other than "the circuit in which the [AIR21] violation . . . allegedly occurred," courts commonly cure these kinds of venue defects by transfer, not dismissal. *See, e.g.*, *Williams v. Dep't of Labor*, 370 F. App'x 97, 97–98 (Fed. Cir. 2010) (per curiam) (transferring an AIR21 petition, brought in the Federal Circuit, to the appropriate regional circuit court); *Carson v. Dir., Office of Workers' Comp. Programs*, No. 97-1203, 1997 WL 573483, at *1 (D.C. Cir. Aug. 26, 1997) (per curiam) (transferring a petition brought in the wrong circuit under the Longshore and Harbor Workers' Compensation Act).

place [a party] in administrative proceedings in the first place." *Jarkesy v. SEC*, 803 F.3d 9, 22 (D.C. Cir. 2015). Likewise, claims are not wholly collateral to an administrative enforcement scheme when they arise from agency actions taken in the course of that scheme. *Id.* at 23–24. Far from being wholly collateral, these types of claims are "inextricably intertwined" with the enforcement scheme. *See id.* at 23 (quoting *Jarkesy v. SEC*, 48 F. Supp. 3d 32, 38 (D.D.C. 2014)). Furthermore, a challenge to an administrative proceeding's validity is not wholly collateral when it is actually the "vehicle by which [the party] seeks to prevail in his administrative proceeding." *Id.* at 23 (quoting *Elgin v. Dep't of the Treasury*, 132 S. Ct. 2126, 2139–40 (2012)).

Here, Bombardier attacks the Department's decision to subject Bombardier to AIR21 administrative proceedings in the first place. *See* Compl. ¶¶ 4–6 ("Defendants have no statutory authority to proceed against Bombardier . . . ."). This simple fact alone reveals that Bombardier's suit is not wholly collateral to AIR21 enforcement and review. But Bombardier also makes the same argument in this Court as it did before the agency: that AIR21 cannot apply extraterritorially, and so it cannot apply to Bombardier, a Canadian company. *See* Compl. ¶¶ 3–6; Decision & Order Den. Resp't's Mot. Summ. Decision 6. Bombardier's claim to jurisdiction in this Court is thus also the "vehicle by which" it seeks to prevail before the Department. Hence, its claim is not wholly collateral to the Department's administrative proceedings.

This case closely parallels *Jarkesy v. SEC*, and this Court merely reaches the same conclusion as the one the D.C. Circuit reached there. In *Jarkesy*, the plaintiffs sought to escape the Securities and Exchange Commission's administrative proceedings by filing suit in this Court. *See Jarkesy v. SEC*, 803 F.3d 9, 13 (D.C. Cir. 2015). Like Bombardier, the *Jarkesy* plaintiffs filed suit before their agency proceedings culminated in a hearing before an

administrative law judge. *See id.* Injunctive and declaratory relief was necessary, they argued, to prevent the Commission from continuing an administrative proceeding that violated, among other things, the plaintiffs' constitutional rights. *Id.* at 13–14.

The D.C. Circuit refused to entertain the plaintiffs' arguments. It described their attempt to manufacture district court jurisdiction as one seeking "to short-circuit the administrative process through the vehicle of a district court complaint." *Id.* at 24 (quoting *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 876 (D.C. Cir. 2002)). Rather than allowing the plaintiffs to "make an end run" around the administrative process, the D.C. Circuit declared that the district court rightly dismissed the plaintiffs' complaint. *Id.* (quoting *Sturm, Ruger & Co.*, 300 F.3d at 876). The court specified that, because the plaintiffs pressed identical claims as affirmative defenses before the agency, those claims were not "collateral" to the agency's decisions. *Id.* at 23–24.

So too here. Because Bombardier's claims in this Court are identical to those it raised in the Department, letting Bombardier's suit proceed would allow Bombardier to short-circuit the Department's administrative process. Because this Court must "respect the review process established by Congress," Bombardier's complaint must be dismissed. *Id.* at 24 (quoting *Sturm, Ruger & Co.*, 300 F.3d at 876).[14]

---

[14] *Jarkesy* also notes that the burden of enduring administrative proceedings might be viewed either "to indicate a 'collateral' claim" or "to suggest an absence of meaningful judicial review (or both)." *Jarkesy v. SEC*, 803 F.3d 9, 25 (D.C. Cir. 2015). But the court goes on to declare that a burdensome administrative process does not mean preemptive district court review is warranted: even if the party seeking review finds an agency proceeding burdensome, "the party must patiently await the denouement of proceedings within the Article II branch." *Id.* at 26 (quoting *USAA Federal Sav. Bank v. McLaughlin*, 849 F.2d 1505, 1510 (D.C. Cir. 1988)).

As discussed above, this Court finds unpersuasive Bombardier's claim that discovery compliance would be burdensome. *See supra* Part IV.A.3.a; *cf.* Compl. ¶ 42 (claiming that discovery compliance would cost Bombardier "hundreds of thousands of dollars"). This Court follows the D.C. Circuit's reasoning. The burden of discovery compliance does not mean Bombardier lacks the possibility of meaningful judicial review and also does not make Bombardier's suit "collateral" to the Department's administrative proceeding.

### c.  Claims Within the Agency's Expertise

Finally, Bombardier does not levy claims that are outside the Department's expertise. The Department regularly adjudicates AIR21 whistleblower discrimination complaints, and its expertise in this domain is well-recognized. *See Macktal v. Garde*, No. 89-2533, 1992 WL 119113, at *2 (D.D.C. May 11, 1992) ("There can be no doubt that the Department of Labor is the governmental body with particular expertise in the area of whistleblower actions . . . .").

Furthermore, despite Bombardier's vigorous advocacy to the contrary, even the jurisdictional questions here are within the Department's expertise. Bombardier argues that "questions regarding statutory construction and extraterritorial application are questions on which courts—not administrative agencies—are experts." Compl. ¶ 59. In doing so, the company overlooks a key principle in administrative law: when it comes to ambiguities in statutes administered by agencies, courts routinely defer to agency interpretations. *See City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013) ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 847 (1984))).

Moreover, even though Bombardier contends that the Department acted "in excess of [its] statutory jurisdiction and authority," Compl. ¶ 59, an agency's interpretation of a statute it administers is not owed any less deference because it interprets the scope of its own jurisdiction. *Montford & Co. v. SEC*, 793 F.3d 76, 82 (D.C. Cir. 2015); *see also City of Arlington*, 133 S. Ct. at 1868–71 ("[T]he distinction between 'jurisdictional' and 'nonjurisdictional' interpretations is a mirage . . . ."). This Court must therefore give as much deference to the Department's interpretations of its statutory authority under AIR21 as it would to the Department's

31

adjudications of the conduct that AIR21 prohibits. So even though Bombardier's legal claims

concern the scope of the Department's statutory authority, they do not fall outside the

Department's expertise.

On this point, *Jarkesy* is again instructive. There, the D.C. Circuit explained how an

agency can bring its expertise even to claims about the validity of the agency's enforcement

action. The agency could decline to find a violation of the statute that the agency enforces, thus

mooting the need to resolve the validity issues. *Jarkesy v. SEC*, 803 F.3d 9, 29 (D.C. Cir. 2015).

Or the agency could interpret the statute in a way that sheds light on the validity question. *Id.*

Overall, "there are precious few cases involving interpretation of statutes authorizing agency

action in which [the court's] review is not aided by the agency's statutory construction." *Id.*

(quoting *Mitchell v. Christopher*, 996 F.2d 375, 379 (D.C. Cir. 1993)).

The same reasoning applies here. The Department of Labor is charged with enforcing

(and interpreting) the AIR21 whistleblower protection statute. *See* 49 U.S.C. § 42121(b). Its

interpretation of the statute could aid a future reviewing court in ways similar to those

highlighted in *Jarkesy*. If the Department finds AIR21 inapplicable to Bombardier, its decision

would moot the need for judicial resolution of the jurisdictional issue. Or, if the Department

finds AIR21 applicable to Bombardier, the Department's reasoning could provide a reviewing

court with better insight into the statute's purpose, policy, and implementation. *See, e.g.*,

*Clemmons*, ARB No. 12-105, slip op. at 8 (Dep't of Labor Nov. 25, 2013), *available at* 2013 WL

6354832, at *5 (discussing AIR21's purposes and policy). Either way, the Department's

expertise will be useful.

\*      \*      \*

In sum, Bombardier's claims are of the type intended to be reviewed within the AIR21 statutory structure. Pursuing these claims administratively will not foreclose later meaningful judicial review, the claims are not wholly collateral to AIR21 review provisions, and those claims do not fall outside the Department's expertise. For these reasons, and because the AIR21 statutory structure has a fairly discernible intent to preclude premature suits in federal court, Bombardier's complaint must be dismissed. Holding otherwise would continue the parallel litigation of identical issues in this Court and in the Department of Labor, leaving open the possibility of future inconsistent judgments. *See generally Jarkesy v. SEC*, 803 F.3d 9, 30 (D.C. Cir. 2015) (discussing this possibility). To avoid that unwelcome result, the Court will dismiss Bombardier's complaint for lack of jurisdiction.[15]

---

[15] The exception to statutory preclusion created by *Leedom v. Kyne*, 358 U.S. 184 (1958), does not apply here. In *Leedom*, because the National Labor Relations Board issued an order "in excess of its delegated powers" and contrary to a "clear and mandatory" statutory provision, the Supreme Court allowed an aggrieved party to obtain judicial review of the order, even though it was not final. *See* 358 U.S. at 187–189; *see also Mittleman v. Postal Regulatory Comm'n*, 757 F.3d 300, 307 (D.C. Cir. 2014) (noting that extrastatutory review may be available "to determine whether the agency has acted "ultra vires").

The D.C. Circuit has, however, elaborated that "[t]he invocation of *Leedom* jurisdiction . . . is extraordinary." *Nat'l Air Traffic Controllers Ass'n AFL–CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006) (quoting *Ass'n of Civilian Technicians v. Fed. Labor Relations Auth.*, 283 F.3d 339, 344 (D.C .Cir. 2002)). Thus, "*Leedom* jurisdiction is extremely narrow in scope." *Id.* For *Leedom* jurisdiction to be available, Bombardier would have to show that (1) the Department acted ""in excess of its delegated powers and contrary to a specific prohibition' which 'is clear and mandatory,'" and (2) barring judicial review now would wholly deprive Bombardier "of a meaningful and adequate means of vindicating its statutory rights." *See id.* (quoting *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991), and *Leedom*, 358 U.S. at 188).

As discussed above, Bombardier cannot show that barring judicial review now would foreclose all meaningful judicial review. *See supra* Part IV.A.3.a. *Leedom* jurisdiction does not apply here.

## B. The Administrative Procedure Act

Bombardier's asserted reliance upon the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706, does not resuscitate its case. Even if the AIR21 statutory scheme did not preclude this Court's jurisdiction, Bombardier fails to state a claim under the APA.[16] Neither the AIR21 statutory scheme nor the APA provides Bombardier with a valid basis for district court review.

### 1.  Legal Standard

The APA's review provisions are not jurisdictional. *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 661 (D.C. Cir. 2010). Instead, 5 U.S.C. § 704, which defines actions reviewable under the APA, simply "limits causes of action under the APA." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 806 (D.C. Cir. 2006); *see also Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (noting that "[i]f there was no final agency action here, there is no doubt that [the party] would lack a cause of action under the APA").

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A court considering a motion for failure to state a claim presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

---

[16] Likewise, even if Bombardier has a cause of action for district court APA review, that does not cure this Court's lack of jurisdiction to review the Department's administrative proceedings. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868))). Also, "to the extent that . . . statutes preclude judicial review," the APA does not apply. 5 U.S.C. § 701(a).

A plaintiff need not plead all elements of a prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. More relevantly here, a court need not accept as true a plaintiff's legal conclusions, even when the plaintiff couches those legal conclusions as factual allegations. *Id.*; *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).[17]

### 2.  No Reviewable Agency Action

5 U.S.C. § 702 provides that a litigant "adversely affected or aggrieved by agency action" is "entitled to judicial review thereof." But 5 U.S.C. § 704 defines actions reviewable to include

---

[17] Although a court generally cannot consider matters beyond the pleadings at the motion to dismiss stage, it may consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Angelex Ltd. v. United States*, No. 15-0056, 2015 WL 5011421, at *11 n.11 (D.D.C. Aug. 24, 2015) (quoting *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011)).

To lay out its APA claims, Bombardier's complaint relies on the Department's past decisions in the adjudication of Mr. Sobhani's whistleblower complaint. Compl. ¶¶ 26–45. Bombardier's complaint discusses the decisions specifically, *see id.*, and Bombardier produced the Department's decisions as exhibits appended to its opposition to the Department's motion to dismiss, *see* Pl.'s Opp'n Defs.' Mot. Dismiss Exs. F–I, K–L, ECF No. 17-1. For the APA analysis, therefore, the Court considers the record established by Bombardier's complaint and by the Department decisions Bombardier produced.

just (1) "[a]gency action made reviewable by statute" and (2) "final agency action for which there is no other adequate remedy in a court." Section 704 further specifies that "[a] preliminary, procedural, or intermediate agency action . . . is subject to review *on the review of the final agency action*" (emphasis added).

Here, the Department's actions are not yet reviewable by statute. AIR21 allows for judicial review of final orders only, and, even then, review is had in the court of appeals, not this Court. *See* 49 U.S.C. § 42121(b)(4)(A). Bombardier therefore cannot obtain APA review on the basis of an "agency action made reviewable by statute." Neither can Bombardier obtain APA review over a "final agency action for which there is no other adequate remedy in a court." The Department has not issued a final order on Mr. Sobhani's AIR21 whistleblower complaint, and so it has yet to take final agency action. And even if the Department had taken final agency action, Bombardier has another adequate remedy in a court: judicial review in a United States Court of Appeals once the Department issues a final order. *See id.* In sum, this case does not fall within § 704's ambit.

Nor is APA review available on the narrow issue of the Department's jurisdiction over Bombardier. Bombardier argues that the Department of Labor has taken a final agency action by asserting AIR21 jurisdiction over Bombardier. Pl.'s Opp'n Defs.' Mot. Dismiss 13, ECF No. 17. Courts interpret "finality" in a "pragmatic" way, particularly when an agency acts by rulemaking. *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980) (reviewing *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), in which the Supreme Court held that an agency's publication of regulations was a final agency action). But when an agency acts by adjudication, as here, the finality analysis is often simpler: the agency action is not final while the adjudication is still pending. *See id.* at 239–41 (explaining how pending administrative

proceedings in the agency adjudication meant that the agency's position, as articulated in its administrative complaint, was not yet final).

Regardless of the context, however, courts routinely look for two signals of finality. First, the agency's action must be "definitive," or the "consummation" of the agency's decisionmaking process. *See Sackett v. EPA*, 132 S. Ct. 1367, 1372 (2012); *Standard Oil*, 449 U.S. at 239–41; *CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 477–78 (D.C. Cir. 2011). Second, the agency's action must determine rights and obligations, so that legal consequences flow from the agency's action. *See Sackett*, 132 S. Ct. at 1371–72; *CSI Aviation*, 537 F.3d at 477; *see also Standard Oil*, 449 U.S. at 239–42 (requiring "legal or practical effect" flowing from an agency's action to make it final).

Neither finality signal is present here. The Department's actions amount to a decision to postpone judgment on Mr. Sobhani's whistleblower claim until it becomes clear, through discovery, whether AIR21 jurisdiction is proper. *See* Decision & Order Den. Resp't's Mot. Summ. Decision 15, Pl.'s Opp'n Defs.' Mot. Dismiss Ex. H, ECF No. 17-1; Order Den. Resp't's "Motion for Certification or, Alternatively, Reconsideration" 4–6, Pl.'s Opp'n Defs.' Mot. Dismiss Ex. I, ECF No. 17-1. Thus, the Department's decisionmaking process has not consummated, not even on the jurisdictional issue. The Department refused to grant Bombardier summary decision specifically to allow discovery, including discovery on the issue of whether AIR21 should apply to Bombardier. *See* Decision & Order Den. Resp't's Mot. Summ. Decision 13–15.

The Department's assumption that it has jurisdiction for the time being also does not impose the legal consequences typically associated with final agency actions. The Department did not order Bombardier to provide relief to Mr. Sobhani, *see id.* at 15, and the burden of

discovery compliance is "different in kind . . . from the burdens attending what heretofore has been considered to be final agency action," *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242 (1980). As the D.C. Circuit has held, when an agency "*assumes* for now that it has jurisdiction to regulate," it "has not yet taken the steps required under the statutory and regulatory scheme for its actions to have any legal consequences." *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731–32 (D.C. Cir. 2003). Hence, the Department's refusal to dismiss Bombardier from its AIR21 proceedings is not yet a final agency action suitable for this Court's review.

Furthermore, where Congress has already provided "special and adequate review procedures," the APA is not an independent source of federal court jurisdiction to review agency action. *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (quoting U.S. Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* 101 (1947)); *see also* 5 U.S.C. § 703 (declaring that "[t]he form of proceeding for judicial review is the special statutory review proceeding . . . specified by statute" unless such review is absent or inadequate). Congress "did not intend the [APA's] general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." *Bowen*, 487 U.S. at 903. Existing statutory review procedures are adequate when they offer relief of the "same genre" as APA review. *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005)).

Here, that is what Bombardier has. Once the company obtains a final order from the Department, AIR21 grants it the right to judicial review in a court of appeals and specifies that appellate review must conform to the APA. *See* 49 U.S.C. § 42121(b)(4)(A) ("Review shall

conform to chapter 7 of title 5, United States Code."); *see also, e.g.*, *Villaneuva v. U.S. Dep't of Labor*, 743 F.3d 103, 108 (5th Cir. 2014) (explaining, in an appeal brought under 49 U.S.C. § 42121(b)(4)(A), that judicial review of the Administrative Review Board's order "is governed by the standards set out in the Administrative Procedure Act, 5 U.S.C. § 706(2)"); *Hoffman v. Solis*, 636 F.3d 262, 268 (6th Cir. 2011) (same); *Vieques Air Link, Inc. v. U.S. Dep't of Labor*, 437 F.3d 102, 104 (1st Cir. 2006) (per curiam) (same). In other words, AIR21's statutory review procedures do not just offer relief of the "same genre" as APA review; judicial review under AIR21 exactly parallels review otherwise available under the APA. Because the AIR21 statutory scheme establishes separate and adequate procedures for judicial review of the Department's actions, the APA cannot create an escape hatch for Bombardier. Bombardier must complete administrative proceedings in the Department before seeking judicial review. And, even then, it must seek judicial review in the courts of appeal, not before this Court.[18]

---

[18] Bombardier's argument that no court of appeals would have jurisdiction is unavailing. As explained above, if the Department finds Bombardier has sufficient connections with the United States to justify AIR21's applicability, then the domestic location where the Department finds those connections could provide the geographical basis for federal appellate review. And, in any event, AIR21's judicial review provision does not limit the appellate courts' jurisdiction; it merely specifies the appropriate venues where an aggrieved party may petition for appellate review. *See supra* Part IV.A.3.a.

## V.  CONCLUSION

The AIR21 statutory scheme precludes this suit, and the APA does not create an independent avenue for this Court's review. Consequently, Bombardier's suit must be dismissed because this Court lacks jurisdiction. For the foregoing reasons, Defendant's motion to dismiss (ECF No. 16) is **GRANTED** and Plaintiff's motion for preliminary injunction (ECF No. 19) is **DENIED AS MOOT**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 12, 2015                              RUDOLPH CONTRERAS
                                                       United States District Judge